## A97A2152. McGOWAN v. McGOWAN.
### (498 SE2d 574)

SMITH, Judge.

Norman and Sherry Jean McGowan were divorced in Texas in 1992. Under the Texas divorce decree, Ms. McGowan was awarded custody of the couple's minor child. Mr. McGowan filed a petition for change of custody in Polk County Superior Court in May 1996 and also sought domestication of the Texas final judgment and divorce decree. Ms. McGowan answered and counterclaimed, seeking modification of visitation and child support. Following a hearing, the trial court denied Mr. McGowan's petition to modify custody and modified his child support obligations. The court also modified certain aspects of the Texas decree concerning visitation. Mr. McGowan's motion for new trial was denied, and we granted his application for discretionary appeal. We cannot reach the merits of his contentions, however. Although an order of domestication as such is not necessarily required, the record does not show domestication of the Texas judgment and decree by any method, whether pursuant to *Pearson v. Pearson*, 263 Ga. 400 (435 SE2d 40) (1993), OCGA § 19-9-55, or any other legal procedure. The trial court consequently was not authorized to modify that decree. We must therefore vacate the trial court's judgment and remand for consideration of Mr. McGowan's request for domestication of the Texas decree.

In *Pearson*, the parties were divorced in Texas. Both then moved to Georgia, and Ms. Pearson filed a petition seeking to modify child support in Cobb County. She also amended her complaint to seek domestication of the Texas decree. The trial court never entered an order domesticating the foreign judgment but did modify the child

support obligations set out by the decree. Id. The Supreme Court found that the final decree remained a Texas judgment because no prior order was entered domesticating that judgment in Georgia. Id. at 400-401. Distinguishing between enforcing judgments and domesticating judgments, the Court stated that "Georgia permits modification of a foreign divorce decree only *after* domestication of that judgment. [Cits.]" Id. at 401. Although neither party objected to the trial court's entry of a modification order before it ruled on the request for domestication and neither raised .the issue on appeal, the Supreme Court vacated the appeal because "an order of domestication was a necessary prerequisite to the trial court's authority to modify. [Cit.]" Id. We find no such order filed in this case, and, under *Pearson*, the trial court therefore did not have authority to modify the Texas decree.

We note that the law seems to be somewhat in conflict with regard to the procedure for domesticating a foreign divorce decree. In *Pearson*, supra, the Court relied on *Blue v. Blue*, 243 Ga. 22 (252 SE2d 452) (1979), for the proposition that "Georgia permits modification of a foreign divorce decree only *after* domestication of that judgment." *Pearson*, supra at 401. This is indeed a correct statement of the holding in *Blue* in which the Court allowed modification of a domesticated sister state decree. *Blue*, supra at 23. *Blue* did not address, however, the issue of how a foreign custody decree can be domesticated. Such a decision would have been futile in any event, because *Blue* was decided prior to our legislature's adoption of the Uniform Child Custody Jurisdiction Act ("the Act"), OCGA § 19-9-40 et seq., effective January 1, 1979. See Ga. L. 1978, p. 258. The Act includes its own provisions for domesticating and modifying foreign custody decrees. See OCGA §§ 19-9-54 and 19-9-55.

OCGA § 19-9-55 sets forth the requirements for domesticating a custody order of another state. Specifically, that section provides that "[a] certified and exemplified copy of a custody decree of another state may be filed in the office of the clerk of any superior court of this state. The clerk shall treat the decree *in the same manner* as a custody decree of the superior court of this state. A custody decree so filed *has the same effect* and shall be enforced in like manner as a custody decree rendered by a court of this state." (Emphasis supplied.) OCGA § 19-9-55 (a). This subsection clearly authorizes domestication by simply filing a certified and exemplified copy of the foreign decree and states that such a decree will have the "same effect" as a custody decree rendered by a court of this state. No other domestication provisions appear within the Act.

The prerequisites for modifying a foreign state custody decree are stated in OCGA § 19-9-54 (a): "If a court of another state has made a custody decree, a court of this state shall not modify that

decree unless: (1) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or has declined to assume jurisdiction to modify the decree; and (2) The court of this state has jurisdiction."

Shortly after the Act was adopted, the Supreme Court decided *Roehl v. O'Keefe*, 243 Ga. 696 (256 SE2d 375) (1979). In *Roehl*, the appellant asserted that "since [a] North Carolina divorce was never domesticated, the Superior Court of Pike County had no jurisdiction to modify the visitation conditions set out in [the] divorce decree and consequently had no authority to hold her in contempt." Id. at 696. In addressing the domestication issue, the Court found as a matter of fact that "[a]n authenticated copy of the foreign decree appears in the record of this case, Code Ann. § 38-627 (b) [now codified as OCGA § 24-7-24], but *no* order ha[d] been entered making it a Georgia judgment." Id. The appellant contended that without a court order domesticating the judgment, "the Pike Superior Court had no subject matter jurisdiction to modify [the appellee's] visitation rights." Id. at 696-697. The Court disagreed. It found that under former Code Ann. § 74-515 (a) (2), (now codified as OCGA § 19-9-54 (a) (2)), a Georgia court can modify a custody decree of another state, if the Georgia court has jurisdiction. Id. at 697. The Court further found that under former Code Ann. § 74-516 (now codified as OCGA § 19-9-55) a foreign custody decree was enforceable "merely by filing a certified copy [of the decree] with the clerk of the superior court." Id. at 697. Keeping in mind that the specific issue was whether the decree was properly domesticated for modification purposes, the Court held that "[s]ince a certified copy of the North Carolina decree appears in the record, it was properly 'domesticated' pursuant to [the] Act." Id.

Although the Supreme Court's opinion in *Pearson* does not appear to be based on the Act, the Court again addressed the domestication issue. In *Pearson*, the appellant sought both to modify appellee's child support obligations and to domesticate the Texas divorce decree. The trial court modified the child support obligations provided in the Texas decree, but it never entered an order in response to the petition to domesticate the Texas judgment. The Supreme Court reversed the trial court's modification order because *"[o]n the record . . . [the] final divorce decree remains a Texas judgment, since there was no prior order domesticating that judgment in this state."* (Emphasis supplied.) *Pearson*, supra at 400-401.

Three things are clear from the Supreme Court's opinion in *Pearson*. First, the appellant did not attempt to domesticate the Texas decree pursuant to the Act by filing a certified and exemplified copy of the judgment. Rather, the appellant petitioned the trial court to issue an order domesticating the judgment. Second, the trial court

never entered a domestication order in response to the petition. Finally, because the appellant only attempted to domesticate by petitioning the trial court for a domestication order, the Supreme Court did not address the issue of whether the Texas decree could have been domesticated and modified under OCGA §§ 19-9-54 and 19-9-55 of the Act. See *Henderson v. Justice*, 223 Ga. App. 591 (478 SE2d 434) (1996).

Accordingly, we must vacate the trial court's judgment and remand for consideration of Mr. McGowan's request for domestication of the Texas decree.

*Judgment vacated and case remanded. McMurray, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in the judgment that the trial court order must be vacated and the case remanded for domestication, but the law does not require the court to enter an order domesticating the foreign judgment. It will be accomplished if Mr. McGowan files it with the clerk of court, as a foreign judgment, pursuant to either OCGA § 19-9-55 or § 9-12-132. No court order is necessary to domesticate the Texas decree.

In Mr. McGowan's petition for change of custody, he asserted that the Texas decree "should be domesticated by [the trial court] pursuant to OCGA § 9-12-130 *et seq.*, and thereby made the judgment of [that] court," and in his prayer for relief he demanded that this be done.

OCGA § 9-12-130 et seq. constitutes the Uniform Enforcement of Foreign Judgments Law and simply requires, for domestication, that an authenticated copy of the foreign judgment be "filed in the office of the clerk of any court of competent jurisdiction of this state." OCGA § 9-12-132. Thereafter, according to that statute, it is to have the same effect as would a Georgia judgment. The problem here is that Mr. McGowan did not file it; he merely attached it as an evidentiary exhibit to his petition to change custody. It was thus, at best, in the case under the evidentiary rule contained in OCGA § 24-7-24. The clerk did not have it recorded as a separate judgment, as would be done for a fee had it been filed as a foreign judgment under the Uniform Act. OCGA § 9-12-135.

OCGA § 19-9-55 allows domestication of foreign *custody* decrees specifically, within the law governing child custody proceedings generally. It provides the exact same procedure, i.e., a simple filing with the clerk. There is a slight difference in what must be filed, in that OCGA § 9-12-132 calls for a copy "authenticated in accordance with an act of Congress or statutes of this state," whereas OCGA § 19-9-55 calls for "[a] certified and exemplified copy." But in both instances the

domestication is achieved by a proper filing. And in both instances the effect is the same; both are treated as judgments or decrees of Georgia, for purposes of enforcement.

As stated by the Supreme Court soon after enactment of OCGA § 19-9-55 in 1978, "foreign custody decrees are enforceable merely by filing a certified copy with the clerk of the superior court. Since a certified copy of the [foreign] decree appears in the record, it was properly 'domesticated' pursuant to this Act." *Roehl v. O'Keefe*, 243 Ga. 696, 697 (1) (256 SE2d 375) (1979).

The rub comes when a parent or other person in the court-decreed custody arrangement desires to modify it. In such instances, as in this case, the Georgia court cannot change the now-domesticated foreign judgment until it first makes two rulings: (1) the foreign court either no longer has jurisdiction or declines jurisdiction to modify its decree; and (2) the Georgia court does have jurisdiction.[1] That is required by OCGA § 19-9-54, which has nothing to do with domestication but rather with changing an enforceable domesticated foreign custody decree. It is in keeping with the requirements of the federal Parental Kidnapping Prevention Act (PKPA), 28 USC § 1738A (a), (f). See *Garrett v. Garrett*, 220 Ga. App. 172, 174 (469 SE2d 330) (1996), aff'd, 267 Ga. 356 (477 SE2d 804) (1996). The Supreme Court in *Garrett* refers to the PKPA/OCGA § 19-9-54 requirement as a two-prong test. 267 Ga. at 357.

Unfortunately, the Supreme Court in *Pearson v. Pearson*, 263 Ga. 400 (435 SE2d 40) (1993), referred to the order making these rulings as being an order "domesticating" the foreign judgment. A "domesticated" judgment is one which is "[m]ade domestic or converted to domestic use." Black's Law Dictionary, p. 434 (4th ed.). See *NationsBank v. Gibbons*, 226 Ga. App. 610, 612 (487 SE2d 417) (1997) (a filed foreign judgment thereby becomes a domesticated Georgia judgment and has the same effect as a Georgia judgment). The requisite order only sets the stage for authority to *change* the domesticated order. So, for example, a party could enforce the provisions of that foreign custody order once it is properly filed with the clerk, without an order ruling on the two issues set out in OCGA § 19-9-54. They only establish the threshold for a Georgia court's consideration of revision. The Supreme Court's ruling in *Pearson*, supra at 401, that "an order of domestication was a necessary prerequisite to the trial court's authority to modify," confuses domestication,

---

[1] *Mulle v. Yount*, 211 Ga. App. 584 (1) (440 SE2d 210) (1993) (non-precedential), is an example of a case in which the issue was whether the two-prong jurisdictional test of OCGA § 19-9-54 was met. The same issue, but under the Parental Kidnapping Prevention Act, was the subject of the first division of the opinion in *Henderson v. Justice*, 223 Ga. App. 591, 592 (1) (478 SE2d 434) (1996).

which is done by filing with the clerk, with authority to modify.

Of course, as recognized in *Blue v. Blue*, 243 Ga. 22 (252 SE2d 452) (1979), the decree must be domesticated before it can be modified. But domestication is only one step, and an easy non-judicial one at that. The second step is the trial court's rulings on the two issues created by OCGA § 19-9-54. When a foreign decree is domesticated and thereafter the trial court rules favorably on the two statutory prerequisites, then it may move to the subject of modification on its merits.

In *Pearson* the Supreme Court cited *Sovern v. Sovern*, 156 Ga. App. 752, 753 (3) (275 SE2d 791) (1980), for the proposition that the petitioner could amend her petition to seek domestication in the same action in which she sought modification. While that would be true for the OCGA § 19-9-54 issues, it would not be necessary for domestication under either OCGA § 19-9-55 or § 9-12-132; proper filing with the clerk under either one of those two statutes would be sufficient.

On the other hand, if petitioner were following the old, more cumbersome procedure for domesticating foreign judgments, then a prayer for a court order would be appropriate. *Okekpe v. Commerce Funding Corp.*, 218 Ga. App. 705, 707-714 (463 SE2d 23) (1995) (Beasley, C. J., concurring specially). An example is *Crosby v. Wenzoski*, 164 Ga. App. 266 (296 SE2d 162) (1982). That action to domesticate a foreign judgment shows its treatment as a separate litigated case, complete with motion for summary judgment, motion for judgment on the pleadings, counterclaim, and appeal.

That procedure seems to be the one which the petitioner was following in *Sovern*, although the opinion in that case does not identify it. OCGA § 9-12-132 was not yet enacted, and OCGA § 19-9-55 had just been enacted two years before *Sovern*; the action would have been filed much before that decision was published. Even under the Uniform Act which was made Georgia law in 1986, the old procedure remains available, albeit only for use by judgment creditors. OCGA § 9-12-136.

*Parker v. Parker*, 233 Ga. 434 (211 SE2d 729) (1975), and *White v. White*, 233 Ga. 289 (210 SE2d 817) (1974), both involved the old separate procedure for domestication, i.e., the filing of a complaint for domestication, which would indeed lead to a court order of domestication. At the time both of these cases were decided, neither the Uniform Act (specifically OCGA § 9-12-132) nor the similarly streamlined domestication procedure for foreign custody decrees contained in OCGA § 19-9-55 had yet been made law in Georgia. In *Blue*, supra, the Supreme Court referred to both of these cases as authority for domestication for foreign alimony and child support decrees. The action in *Blue* probably arose before the effective date of OCGA § 19-

9-55 and certainly before the adoption of the Uniform Act, so the old method was likely the only one available.

In sum, a court order finding jurisdiction upon a consideration of the two prerequisites set out in OCGA § 19-9-54 does not constitute an order of domestication. Instead, properly filing the foreign custody decree as instructed in OCGA § 19-9-55 fully accomplishes domestication.

DECIDED MARCH 19, 1998.

*York, McRae & York, Robert T. Monroe*, for appellant.
*Ana M. Rountree, Julie W. Cain*, for appellee.